**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1804-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

AMADU KOROMA,

     Defendant-Appellant.

_____

Submitted February 16, 2022 – Decided March 31, 2022

Before Judges Hoffman, Whipple and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Accusation No. 14-06-0202.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Amadu Koroma appeals from a June 30, 2020 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Because the record indicates defendant may not have understood questions regarding the effects of a plea on his immigration status and the record does not show the substance of prior counsel's advice as to the possible immigration consequences of accepting the guilty plea, and whether she pressured defendant to plead guilty, we remand for an evidentiary hearing.

In 2003, defendant was granted asylum as a refugee from Sierra Leone. At sixteen years old, he saw his father killed by people who worked for the government and are still in power. In 2011, he became a lawful permanent resident.

On June 20, 2014, defendant waived indictment and trial by jury for third-degree theft of a cell phone, N.J.S.A. 2C:20-3(a), and pled guilty under Hudson County Accusation No. 14-06-0202-A. On the plea form, defendant answered the questions as follows:

> 17. a. Are you a citizen of the United States? No.
>
>     . . . .
>
> b. Do you understand that if you are not a citizen of the United States, this guilty plea may result in your removal from the United States and/or stop you from

A-1804-20

being able to legally enter or re-enter the United States?
Yes.

c. Do you understand that you have the right to seek individualized advice from an attorney about the effect your guilty plea will have on your immigration status? Yes.

d. Have you discussed with an attorney the potential immigration consequences of your plea? No.

. . . .

e. Would you like the opportunity to do so? No.

f. Having been advised of the possible immigration consequences and of your right to seek individualized legal advice on your immigration consequences, do you still wish to plead guilty? Yes.

At the plea hearing, defendant stated he understood the plea agreement and he had time to discuss the case with his attorney before deciding to plead guilty. With respect to his immigration status, the court engaged in the following colloquy with defendant:

[The court]: Do you understand that by pleading guilty to this offense, you are subject to deportation?

[Defendant]: Yes.

[The court]: You understand you have a [r]ight to consult with an attorney specializing in [i]mmigration matters before entering this plea to determine what the consequences of this plea would be on your status?

3

[Defendant]:  Yes.

[The court]:  Have you done that?

[Defendant]:  Yes.

[The court]:  You have spoken with an [i]mmigration lawyer?

[Defendant]:  Never spoke to [i]mmigration.

[The court]:  Do you intend to speak to one?

[Defendant]:  No.

[The court]:  You are giving up that [r]ight?

[Defendant]:  I never spoke to them.

[The court]:  I know you haven't.  Do you understand you have the [r]ight to do that?

[Defendant]:  Yes, my Lord.

[The court]:  Do you intend to give that [r]ight up?

[Defendant]:  Yes.

    . . . .

[The court]:  So, you understand your [r]ights, sir?

[Defendant]:  Yes, my Lord.

Defendant's counsel again raised his immigration issue with the court:

[Defendant's counsel]: . . . I do want to bring to the [c]ourt's attention that[] I did speak quite a few times,

4  <span>A-1804-20</span>

twice, to [defendant] about his [i]mmigration. He's listed as refugee, [Y]our Honor, not a particular classification I find often, but [defendant] has assured me that he doesn't believe he would suffer any [i]mmigration consequences.

Your Honor, I want to make sure you tell the [j]udge that's what you told me.

[Defendant]: Yes, that's true. That's what I told her.

[The court]: Well, I just need to make sure that you're aware of the fact that you have a [r]ight to consult with a lawyer about your [i]mmigration status before you enter the plea, and you advised me that you were giving that [r]ight up[.] [I]s that correct?

[Defendant]: Yes.

On August 1, 2014, defendant was sentenced to a two-year term of probation and did not appeal his sentence or conviction. As a result of his plea, the United States Department of Homeland Security ordered defendant's deportation, which he is currently appealing.

On June 10, 2019, defendant filed a pro se petition for PCR. He claimed "[i]neffective counsel[,] advised to plead guilty without due consideration of facts and circumstances surrounding arrest and my immigration status – including negative [e]ffects upon status." Defendant filed a certification stating the following facts applicable to this appeal:

My attorney convinced me that if I went to trial I would lose and spend more years in prison, so I should take the guilty plea that was offered and I would get out on probation. She coerced me into taking the plea even though I wanted to go to trial as I was sure I would not be convicted. . . .

My attorney did not provide me with a copy of the discovery so I could see what the evidence was against me. She also never reviewed the evidence with me. I was left in the dark and trusted my attorney to properly advise me since I had no choice.

My attorney only met with me two times, and only seemed interested in having me plead guilty. She never seriously talked with me about my wanting to go to trial.

. . . .

When the [c]ourt asked me if I wanted to speak with an immigration attorney before I entered the guilty plea, I at first did not understand but I said I did not want to. My attorney did not go into any real detail about this. I was a refugee and had a green card. . . . [I]f I had been given the opportunity to speak with an immigration attorney I would have had better information.

On May 19, 2020, the PCR court heard oral argument. On June 30, 2020, the court entered an order and written decision denying defendant's PCR petition because he failed to allege a prima facie claim of ineffective assistance of counsel requiring an evidentiary hearing. The court rejected defendant's argument that "the plea colloquy indicate[d] 'some lack of understanding on the

part of the defendant as to the [c]ourt's pertinent questions, at least initially, and his acknowledgment of the questions upon restating.'" The court was also not convinced defendant's use of the term "my Lord" when addressing the judge demonstrated that he did not fully understand the proceedings.

The court noted that defendant did not allege that counsel advised him "one way or another" about the immigration consequences of his plea. He answered on the plea form that he was advised of the right to consult with an immigration attorney, and he was advised of that right at the plea hearing. The court also noted that given defendant's unique immigration status, the law was not "succinct and straightforward," and defendant's counsel was not obligated to do more than advise defendant that "pending criminal charges may carry a risk of adverse immigration consequences, [Padilla v. Kentucky, 559 U.S. 356, 369 (2010)]."

Moreover, the court noted that the judge explained to defendant that he was subject to deportation. Additionally, the court noted that defendant's counsel explained she met with defendant multiple times and defendant was sure he would not be deported. Defendant did not explain what information he would have received that would have affected his decision to plead guilty. Thus, the court concluded that, based on the plea colloquy and plea form, defendant

A-1804-20

understood his right to consult with an immigration attorney, and he was advised about the potential consequences of the plea. This appeal followed.

Defendant raises the following issues:

> POINT ONE
> THE PCR COURT ERRED IN DENYING MR. KOROMA'S PETITION FOR POST-CONVICTION RELIEF WITHOUT GRANTING AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM PRIOR COUNSEL REGARDING THE SUBSTANCE OF HER ADVICE AS TO THE IMMIGRATION CONSEQUENCES OF ACCEPTING THE GUILTY PLEA.
>
> POINT TWO
> THE PCR COURT ERRED IN DENYING MR. KOROMA'S PETITION FOR POST-CONVICTION RELIEF WITHOUT GRANTING AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM PRIOR COUNSEL REGARDING WHY SHE PRESSURED MR. KOROMA TO PLEAD GUILTY.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). Post-conviction relief provides "a built-in 'safeguard that ensures that a defendant was not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)). "A petition for post-conviction relief is cognizable if based upon . . . [s]ubstantial denial in the conviction proceedings of defendant's rights under the

A-1804-20

Constitution of the United States or the Constitution or laws of the State of New Jersey . . . ."   R. 3:22-2(a).   "Ineffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding."   Preciose, 129 N.J. at 460.

> A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of post-conviction relief, a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief.  To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.
>
> [R. 3:22-10(b).]

An evidentiary hearing will not be granted:

> (1) if an evidentiary hearing will not aid the court's analysis of the defendant's entitlement to post-conviction relief;
>
> (2) if the defendant's allegations are too vague, conclusory or speculative; or
>
> (3) for the purpose of permitting a defendant to investigate whether additional claims for relief exist for which defendant has not demonstrated a reasonable likelihood of success as required by [Rule] 3:22-10(b).
>
> [R. 3:22-10(e).]

9

Petitioners must demonstrate they meet the two-prong test in <u>Strickland</u> <u>v. Washington</u>, 466 U.S. 668 (1984).

> The first prong is satisfied by a showing that counsel's acts or omissions fell "outside the wide range of professionally competent assistance" considered in light of all the circumstances of the case. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Therefore, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." To rebut that presumption, a defendant must establish that trial counsel's actions did not equate to "sound trial strategy." In evaluating a defendant's claim, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of the attorney's conduct."
>
> The second prong is satisfied by a defendant showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
>
> [<u>State v. Chew</u>, 179 N.J. 186, 203-04 (2004) (citations omitted).]

In addition, "counsel must inform her client whether his plea carries a risk of deportation," <u>Padilla</u>, 559 U.S. at 374, and "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." <u>Id.</u> at 372.

A-1804-20

The United States Supreme Court considered, with respect to Strickland's attorney-deficiency prong, whether counsel has a duty to inform non-citizen clients of the risk of deportation even if the law is not "succinct and straightforward," see id. at 369; id. at 381 (Alito, J., concurring). New Jersey's Supreme Court considered the same duty.

> [E]ven if removal is not "mandated" in the sense that a state offense is not identified on published lists of offenses equating to aggravated felonies or like mandatorily removable offenses, counsel must highlight for noncitizen clients that entering a guilty plea will place them at risk of removal and that they may seek to obtain counseling on potential immigration consequences in order that their guilty plea be accepted as knowing and voluntary. We will look to transcripts of plea colloquies for evidence that these points were placed on the record with a noncitizen defendant prior to a court's acceptance, and entry, of a guilty plea.
>
> [State v. Gaitan, 209 N.J. 339, 381 (2012).]

In considering whether duties have been met, our "review is necessarily deferential to a PCR court's factual findings based on its review of live witness testimony." Nash, 212 N.J. at 540. We review the PCR court's interpretation of the law de novo. Id. at 540-41.

Defendant first argues that the trial court erred in denying his PCR petition without an evidentiary hearing because testimony was needed to determine the

11

substance of prior counsel's advice regarding the immigration consequences of pleading guilty. We agree.

The transcript shows that defendant may not have understood the questions he was asked. When asked if he understood his right to speak with an immigration attorney, and whether he had done so, he said "yes." However, when further questioned as to whether he had spoken with an immigration attorney, he responded, "Never spoke to immigration." When then asked whether he intended to speak with an immigration attorney, defendant answered, "I never spoke to them." When the court asked again whether defendant understood he had the right to speak with an immigration attorney, he answered, "Yes, my Lord." A plain reading of the transcript indicates that defendant may not have understood the classification difference between immigrants and refugees, and therefore did not understand the consequences, including deportation, that attached to his guilty plea. Further, defendant's colloquy fails to account for the two conversations he had with counsel.

Defendant met his burden of establishing a prime facie case as to require an evidentiary hearing. See Preciose, 129 N.J. at 462. As to the first prong, based on his status as a refugee, defendant "assured [counsel that] he [did not] believe he would suffer any immigration consequences." But the court did not

12

conduct further questioning of whether counsel adequately explained and defendant understood his classification as a refugee and the possible deportation consequences that could result from a guilty plea. Defendant established Strickland's second prong because, at the time of his guilty plea, defendant believed he would be in danger if he was forced to return to Sierra Leone; thus, he provided support that he would not have pled guilty if he had been properly informed by counsel of this potential consequence. If defendant had been fully informed of the possible deportation, we think the results of the proceedings would be different. Because defendant asserts he was not advised that he faced possible deportation, he subsequently waived his right to speak with an immigration attorney. Therefore, an evidentiary hearing is necessary to investigate facts outside of the trial record, specifically the substance of his counsel's advice and whether she consulted him on possible deportation. See Preciose, 129 N.J. at 462.

Defendant next argues that he was pressured to plead guilty by counsel, who convinced him that if he went to trial, "he would spend years in prison." The State counterargues that "a plain reading of the plea transcript shows that [defendant] entered a voluntary, knowing plea." We disagree with the State's

contention based on the colloquy we earlier recounted and concluded that defendant did not understand the questions he was asked.

In accepting a guilty plea, the trial court must establish that the plea was made "voluntarily, knowingly, and intelligently." State v. Howard, 110 N.J. 113, 122 (1988). A court shall not accept a plea of guilty without first determining that the plea is made voluntarily without any threats or promises of inducement, "and with an understanding of the nature of the charge and the consequences of the plea." R. 3:9-2. Because defendant established a prima facie case of ineffective assistance, he raised "material issues of disputed fact that cannot be resolved by reference to the existing record." R. 3:22-10(b). As a result, a remand for an evidentiary hearing is required.

Reversed and remanded. We do not retain jurisdiction. We offer no opinion on whether defendant is entitled to withdraw his guilty plea.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1804-20